2008 UT App 371

**Kathy J. BAUM, Petitioner and Appellant,**

v.

**Michael T. HAYES, Respondent and Appellee.**

No. 20070516–CA.

Court of Appeals of Utah.

Oct. 23, 2008.

Stephen C. Clark and Kenneth A. Okazaki, Salt Lake City, for Appellant.

Sharon S. Sipes, Ogden, and James H. Woodall, South Jordan, for Appellee.

Before Judges THORNE, BENCH, and McHUGH.

OPINION

McHUGH, Judge:

¶ 1 Kathy J. Baum appeals the trial court's award of alimony and distribution of property as entered in the court's decree of divorce. We reverse and remand to allow the trial court to enter more detailed findings.

BACKGROUND

¶ 2 Baum and Michael T. Hayes were married on September 11, 1987. The parties have one child, who was born in 1992.

¶ 3 When the parties were first married, Baum worked full-time while Hayes was in school. During this time, Hayes earned several degrees, including his PhD. Baum was primarily responsible for paying the family's monthly expenses, while Hayes's efforts were focused on completing his education. Throughout these years, Baum periodically liquidated substantial assets to support the family.

¶ 4 After Hayes obtained his PhD, sometime in late 1996 or early 1997, he accepted a position as a professor at the University of Hawaii. Baum resigned her position as the human resources manager of a Utah company and relocated with her family to Hawaii. For the first time during the marriage, Baum ceased working full-time. However, the parties continued to liquidate assets, which were procured primarily through Baum's prior efforts, to supplement the family's living expenses.

¶ 5 In 1997 or 1998, Baum was diagnosed and treated for a brain tumor. The treatment was successful, although the brain surgery left Baum with chronic depression; "a certain incapacity to do multiple stepped, sequenced, complicated tasks"; and "a distinct deficit both in memory ... [and in] reasoning."

¶ 6 In 2000, Hayes lost his position at the University of Hawaii and the parties moved to Washington so Hayes could pursue his teaching career at Washington State University. Baum continued to suffer health problems. In 2004, after Hayes admitted to an affair with one of his graduate students, the parties separated. Baum then moved back to Utah and filed for a divorce.

¶ 7 A bench trial was held on March 5 and 6, 2007, to determine the proper distribution of assets and any award of alimony. The parties contested numerous issues, including Baum's and Hayes's monthly expenses, Hayes's income, Baum's ability to obtain and maintain gainful employment, the parties' assets and liabilities, and Baum's attorney fees. Ultimately, the trial court ruled that Hayes had the ability to earn $6,250 per month and imputed $750 per month to Baum. As a result, the court awarded Baum $565 per month in child support. The district court then determined that the parties had "lived beyond their means" and that "there [wa]s not enough money for the parties to live as they did prior to their separation." The court further found that Baum's "listed needs [we]re exaggerated in many respects." Given these findings, the trial court disregarded Baum's request for monthly support in the amount of $4,941 and instead awarded her $1,200 a month.[1] Baum was further awarded approximately eighty-five percent of the personal property in the parties' former home, one-half of Hayes's retirement account, and other minor property interests. The court also acknowledged that Baum had improperly transferred marital assets into an irrevocable trust for the benefit of the parties' daughter but left those funds undisturbed. Baum appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 Baum argues that the trial court's findings are insufficient to support its award of alimony. "We review a trial court's award of alimony for abuse of discretion." *Bakanowski v. Bakanowski*, 2003 UT App 357, ¶ 7, 80 P.3d 153. "[W]here a trial court fails to enter specific findings ..., making effective review of the alimony award impossible, that omission is an abuse of discretion." *Id.* ¶ 10.

¶ 9 Baum also argues that the trial court erred when it found Hayes's current income to be $6,250 a month instead of approximately $8,000 a month, which he had earned the past two years. "[When] we are charged with the task of reviewing the trial court's findings of fact, we will reverse only if the findings are clearly erroneous." *Breinholt v. Breinholt*, 905 P.2d 877, 879 (Utah Ct.App. 1995).

---

1. Because of Baum's medical complications and the duration of the parties' marriage, the trial court awarded Baum permanent alimony. *See generally* Utah Code Ann. § 30–3–5(8)(h) (2007) ("Alimony may not be ordered for a duration longer than the number of years that the marriage existed unless, at any time prior to termination of alimony, the court finds extenuating circumstances that justify the payment of alimony for a longer period of time."). Hayes does not contest the trial court's ruling on this issue.

## ANALYSIS

■ ¶ 10 Baum first argues that the trial court failed to make the findings necessary to support its award of alimony. Baum specifically challenges the court's findings regarding Baum's financial needs.[2] We agree with Baum that the trial court was required to make an express finding as to her financial needs. *See* Utah Code Ann. § 30–3–5(8)(a) (2007) (requiring the court to consider "the financial condition and needs of the recipient spouse"); *see also Jones v. Jones,* 700 P.2d 1072, 1075 (Utah 1985); *Riley v. Riley,* 2006 UT App 214, ¶ 17, 138 P.3d 84.

¶ 11 In this case, the trial court's findings regarding Baum's financial needs were limited to the following: "[Baum] reports monthly needs of $4,924.... The Court concludes that [Baum]'s listed needs are exaggerated in many respects, including her claim for $800 per month to pay taxes on her hypothetical alimony award, as well as other expenses that while ideal, are not actually being paid." The trial court did not further detail which of Baum's claimed expenses were exaggerated, which were reasonable, or what Baum's total reasonable monthly expenses actually are.[3] Instead, the court merely ruled that "[c]onsidering the nature of [Baum]'s disability, the parties' respective needs and abilities to pay ..., [Hayes must] pay [Baum] $1,200 per month as alimony."

¶ 12 This court's decision in *Bakanowski v. Bakanowski,* 2003 UT App 357, 80 P.3d 153, is controlling on the issue of whether the trial court's ruling was adequate under the circumstances of this case. In *Bakanowski,* we determined that the trial court's finding that the wife's "monthly living expenses ... [were] inflated" was inadequate where the court "explicitly avoided evaluating her [actual] monthly needs." *Id.* ¶¶ 11–13. We are faced with a similar situation here. Several of Baum's expenses were contested during trial. For example, Hayes argued that Baum is living rent-free in a house purchased by her mother. Baum, however, testified that she entered into a lease with her mother and is required to pay $1,000 per month in rent.[4] In the absence of a finding of Baum's actual needs, we are unable to review the alimony award. On appeal, we cannot determine which of Baum's claimed expenses were exaggerated and which were reasonable "without invading the trial court's fact-finding domain." *Id.* ¶ 13 (internal quotation marks and citation omitted). Without understanding Baum's reasonable financial needs, we are unable to review the appropriateness of the amount of alimony the trial court actually awarded. *See id.* We therefore remand so that the trial court may enter specific findings on Baum's financial needs.

■ ¶ 13 Baum's second argument concerns the trial court's finding that Hayes's income was $6,250 per month. Baum argues that the trial court should have found that Hayes's income was approximately $8,000 per month, which is more consistent with Hayes's earnings during the two years prior to the divorce.[5] Although the trial court's

2. Baum also argues that the trial court improperly failed to consider the fact that this was a long-term marriage that dissolved on the threshold of Hayes's major change in income. *See generally* Utah Code Ann. § 30–3–5(8)(c). We disagree. The only substantial increase in Hayes's income that Baum identified came as a result of Hayes obtaining his PhD nearly ten years before the parties divorced. Moreover, the trial court used Hayes's salary as a professor when determining the appropriate amount of alimony. Thus, Baum's alimony award already included Hayes's increased earning potential.

3. In addition, the trial court did not articulate its findings regarding Hayes's monthly expenses. Such findings relate to "the ability of the payor spouse to provide support," Utah Code Ann. § 30–3–5(8)(a); *see also Moon v. Moon,* 1999 UT App 12, ¶ 29 n. 8, 973 P.2d 431, as well as the

trial court's efforts to equalize the parties' post-divorce standards of living. *See generally Batty v. Batty,* 2006 UT App 506, ¶ 5, 153 P.3d 827 ("[T]he trial court should have determined the ability of [h]usband to fill the gap between [w]ife's needs and her own ability to meet those needs, with an eye towards equalizing the parties' standards of living only if there is not enough combined ability to maintain both parties at the standard of living they enjoyed during the marriage.").

4. Hayes also challenged Baum's tax liability, prescription medication expenses, insurance premiums, home maintenance costs, and dry cleaning expenses.

5. Hayes earned approximately $91,000 in 2005 and $96,000 in 2006. The trial court's finding that Hayes's monthly income is $6,250 a month equates to a yearly amount of $75,000.

ultimate finding may be supportable, we are also unable to evaluate this issue without supplemental findings.

¶ 14 The difference between the amount of Hayes's income in 2006, approximately $8,000 per month, and the amount the trial court used in its calculations, $6,250 per month, is the result of the trial court's exclusion of Hayes's part-time employment with Walden University, an online educational program. From the record before us, however, we are unable to determine why the income derived from Walden University was not included in the trial court's ruling. The trial court stated:

> I'm going to find that [Hayes] should not be required to do everything he can to earn money so as to be able to pay the amounts [Baum] ... is asking for. I do find that he certainly ought to maintain one primary job, which is his teaching, which the Court finds he's paid [$]66,600 salary. He has time to do summer work or part time work, which he has consistently done, and the Court's going to impute income for those sources in the amount of $8400,[6] which the Court is saying I expect he's going to have to make at least $75,000. That amount ought to be totally imputed to him and he ought to be expected to have these things based on that.

Although the district court announced in its ruling that Hayes was capable of earning $75,000 a year, it did not explain why the Walden University income would not be included. Likewise, the trial court's written Findings of Fact and Conclusions of Law do not contain any mention of a second job or Walden University.

¶ 15 Baum argues that the trial court was required to consider "all sources of income that were used by the parties during their marriage to meet their self-defined needs, from whatever source—overtime, second job, self-employment, etc., as well as unearned income," *Breinholt v. Breinholt,* 905 P.2d 877, 880 (Utah Ct.App.1995) (emphasis, internal quotation marks, and citation omitted). Thus, according to Baum, Hayes's employment with Walden University should have been included in the court's alimony determination. Hayes, on the other hand, highlights the evidence indicating that his employment with Walden University was temporary, had been available for only two years of the marriage, and may not again be available. Hayes also contends that his work with Walden University conflicted with his responsibilities at Washington State University. Accordingly, Hayes argues that the evidence supports a ruling that his employment with Walden University was no longer reasonably available and therefore was properly excluded. *See generally Riley v. Riley,* 2006 UT App 214, ¶ 20, 138 P.3d 84 (refusing to alter trial court's finding that wife's income was too minimal and occasional to be included as part of the court's calculation because that finding was not clearly erroneous).

¶ 16 The problem we face on appeal is that each of the party's arguments may have merit depending upon the reason the trial court excluded Hayes's additional income. Unfortunately, we are unable to determine from the findings before us what that reason was.[7] Ultimately, the district court has broad discretion to fashion appropriate property settlements and alimony payments in divorce actions. *See, e.g., Higley v. Higley,* 676 P.2d 379, 382 (Utah 1983). That discretion is subject to appellate review, which can only be effectively done if the trial court's analysis is explained in its findings of fact and conclusions of law. Accordingly, we remand for more detailed findings without restriction to any corrections or modifications the trial court deems appropriate.

---

6. The testimony at trial was that Hayes had taught summer school at Washington State University in addition to teaching at Walden University. The $8,400 was consistent with the amount Hayes had received solely for his additional work at Washington State University.

7. It is also possible that the omission of the Walden University income was unintentional. The trial court explicitly found that Hayes "has time to do *summer work* or *part time work, which he has consistently done*" and ruled that it would "impute income from *those sources.*" (Emphasis added.) However, the trial court appears to have included only the income derived from Hayes's summer work at Washington State University and not from his more lucrative part-time work for Walden University.

## CONCLUSION

¶ 17 We reverse and remand the trial court's ruling to allow for more detailed findings concerning Baum's financial needs and the rationale for excluding the Walden University salary from the calculation of Hayes's income.

¶ 18 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge and RUSSELL W. BENCH, Judge.