Glen P. WILLEY, Plaintiff and Appellee,

v.

Rosalind Ann Johnson WILLEY, Defendant and Appellant.

No. 930205–CA.

Court of Appeals of Utah.

April 4, 1996.

Roger D. Sandack, Salt Lake City, for Appellant.

Ellen Maycock, Kruse, Landa & Maycock, L.L.C., Salt Lake City, for Appellee.

Before DAVIS, Associate P.J., and GREENWOOD, and WILKINS, JJ.

WILKINS, Judge:

This case has been before us previously on appeal.

> Because the trial court failed to make adequate findings of fact, we remand[ed] for the entry of appropriate findings, and a reassessment of the awards in light of those findings and our opinion, on (1) the award of alimony, (2) the allocation of debt, and (3) the award of attorney fees at trial and on appeal. We otherwise affirm[ed] [the trial court's prior decision].

*Willey v. Willey,* 866 P.2d 547, 556 (Utah App.1993) (hereinafter *Willey I* ). Ms. Willey again challenges the proceedings in the trial court. We reverse and remand for the entry of an amended decree as herein described.

## BACKGROUND

The factual background of this case is well-described in *Willey I.* For our purposes, we add only those facts and events necessary to review the trial court's actions on remand pursuant to our directions in *Willey I.*

In *Willey I,* we held that the trial court failed to enter sufficient findings of fact in determining Ms. Willey's alimony award. Therefore, we remanded this case and direct-

ed the trial court to review the evidence and enter findings sufficient for us to review its determinations regarding the income imputed to Ms. Willey, the timing and amount of Ms. Willey's rehabilitative alimony award, the allocation of the parties' debts, and the basis for Ms. Willey's limited award of attorney fees at trial. *Willey I,* 866 P.2d at 550–51, 554–56. We also directed the trial court to determine and award to Ms. Willey the attorney fees she incurred in the *Willey I* appeal. *Id.* at 556.

On remand, the trial court took additional evidence limited to Ms. Willey's ability to earn income. The court declined to allow discovery of or testimony regarding Mr. Willey's then-current ability to pay support or attorney fees for Ms. Willey. The court also declined to allow evidence of Ms. Willey's then-current ability to pay her attorney fees. Instead, the trial court chose to rely upon evidence received at trial regarding the parties' financial abilities.

Based upon the review ordered by this court and the additional evidence presented below, the trial court entered additional findings of fact on some of the issues we directed it to address by our remand order, but failed to address others. The trial court revised the award of alimony, considered the allocation of debt, and partially addressed the questions raised regarding attorney fees.

## ISSUES RAISED ON APPEAL

Ms. Willey again challenges the adequacy of the trial court's findings regarding alimony. Specifically, she claims the trial court failed to enter adequate findings regarding the duration of alimony, resulting in an arbitrary termination of that award. She also claims the trial court entered findings of fact unsupported by the evidence, resulting in incorrect calculation and consideration of alimony amounts.

Ms. Willey also claims the trial court abused its discretion by prohibiting her from going forward on a petition to modify the decree and in denying her request for discovery during the course of the proceedings on remand.

In addition, Ms. Willey raises by a separate but now consolidated appeal the question of whether Mr. Willey may offset a post-decree judgment entered in his favor and against Ms. Willey, which arose from the allocation of the marital debts, against his alimony obligation.

Finally, Ms. Willey also claims the trial court failed to make and enter the findings required by our holding in *Willey I* regarding the award of attorney fees incurred at trial and attorney fees on appeal, resulting in an insufficient award of fees.

## ANALYSIS

We are troubled by the incomplete resolution of the issues raised in our remand order. Parties to a divorce proceeding are rarely well-served by repeated examination of the same issues. This is particularly true in a case such as this, where the financial resolution of the marital affairs produces a loss for both parties. To permit the dispute to continue is an injustice to the parties. Moreover,

> [w]e approach the problem here presented in full awareness of the standard rules which favor the findings, judgments and decrees of the trial court, particularly in divorce matters. Notwithstanding this, the right of review on appeal has its purposes.... [This court] would be remiss in its responsibility and this assured right of appeal would be meaningless if it unquestioningly accepted all actions of the trial court and remained insensitive to pleas to rectify inequity or injustice. Consequently, the rule is that when it is made to appear that the court has failed to correctly apply principles of law or equity, ... or that the judgment has so failed to do equity that it manifests a clear abuse of discretion, this court on review will take appropriate corrective action in the interests of justice.

*Watson v. Watson,* 561 P.2d 1072, 1073–74 (Utah 1977) (footnotes omitted).

### I. Alimony

■ Ms. Willey has raised three questions that we agree must be addressed to resolve what alimony award should be in-

cluded in the original divorce decree. First, we consider whether the trial court erred in imputing income to Ms. Willey. Second, we address whether the trial court erred in determining the parties' expenses. Finally, we examine whether the trial court erred in fashioning Ms. Willey's rehabilitative alimony award. "We will not overturn a trial court's alimony ruling as long as the court supports its ruling with adequate findings and exercises its discretion according to the standards we have set." *Willey I*, 866 P.2d at 550. We review the trial court's conclusions of law with respect to alimony awards for correctness, but we will not reverse the court's findings of fact unless they are clearly erroneous. *Breinholt v. Breinholt*, 905 P.2d 877, 879 (Utah App.1995).

### A. Income imputed to Ms. Willey.

█ On remand, we instructed the trial court to review the question of how much income should be imputed to Ms. Willey, if any. *Willey I*, 866 P.2d at 554. The trial court took additional evidence on this question by admitting a vocational counselor's testimony regarding her evaluation of Ms. Willey. The trial court then entered findings of fact imputing monthly income to Ms. Willey of $958.08 for 1992, $991.61 for 1993, $1,026.32 for 1994, and $1,062.24 for 1995. These findings were premised upon the following evidence: at the time of trial, Ms. Willey was employed part-time at the rate of $5.00 per hour in a job for which there were no full-time positions available; Ms. Willey had previously worked part-time in a clothing store in trade for clothing; the vocational evaluator's testimony that Ms. Willey was capable of obtaining full-time employment at an average rate of $5.32 per hour; and the vocational evaluator's testimony that Ms. Willey could expect a 3.5 percent increase in salary each year. We do not disturb these findings on appeal.

Based on this evidence, the court found that Ms. Willey's earning capacity at the time of trial was $5.90 per hour, or $1,027.09 per month if she worked full-time. At the time of trial Ms. Willey was employed only part-time. We therefore accept as implied the finding apparently relied upon by the trial

court that Ms. Willey is voluntarily underemployed, allowing an imputation of income. Because the trial court relied on evidence sufficiently detailed in its findings of fact in imputing income to Ms. Willey, we hold that the court did not abuse its discretion by imputing income to Ms. Willey, and we will not disturb the court's related findings. Instead, we will use the court's imputed income figures to further evaluate and resolve the remaining alimony questions.

### B. Reasonable financial needs of the parties.

█ On remand, the trial court considered a stipulated statement of the parties' reasonable monthly expenditures. Without evidence regarding these stipulated expenses, the trial court reduced Ms. Willey's expenses by $678.41, for a total of $2,000.00 per month, on the basis of what appears to be speculation. In the memorandum decision on remand, the trial court commented that Ms. Willey's "medical expenses surely must not be a monthly ongoing amount of $660.00" and reduced them by $600.00 to a total of $60.00. He also reduced Ms. Willey's automobile expense of $381.83 by the unlikely amount of $78.41. These reductions lowered Ms. Willey's monthly expenses to an even $2,000.00 per month. The trial court likewise reduced Mr. Willey's expenses by $463.16 again to reach an even $2,000.00 per month by reducing the amount of Mr. Willey's uncontested automobile expense, without explanation, saying only that Mr. Willey's "automobile expenses can be similarly adjusted down to reach a figure of $2,000.00 per month for him."

The sheer absence of any evidence upon which to base factual findings regarding these adjustments makes them unacceptable. To allow the trial court to impose speculation on the adjudicatory process violates the basic premise upon which our judicial system is founded. All parties are absolutely entitled to a fair and impartial hearing and adjudication of their affairs. That did not occur in this case. We cannot accept the adjustments made in the parties' monthly expenses crafted by the trial court in the apparent pursuit of round numbers.

For purposes of our correction of the divorce decree, we accept the amounts the parties submitted to the trial court as reflective of their reasonable financial needs at the time of trial.

### C.   Rehabilitative alimony.

It is clear from the structure of the alimony award that it was intended to achieve a rehabilitative purpose.... Thus, the court must make realistic assessments of actual current income and actual expenses. The court must also consider the time demands and expenses of attending school. Absent such an assessment and appropriate findings, there is no basis on which to determine the proper amount and duration of alimony needed to achieve a rehabilitative outcome.

*Willey I,* 866 P.2d at 554.

■ We anticipated that on remand the trial court would review the facts relevant to appellant's rehabilitative alimony award. However, no evidence regarding the circumstances surrounding Ms. Willey's pursuit of further education was sought by or presented to the court. The trial court simply reconfirmed the award of "additional alimony" of $500 per month for "a maximum of nine quarters" of university level education, plus the costs of tuition and books. Mr. Willey is to pay all of this to Ms. Willey, "provided such education is completed within five years of January 1, 1995" or "within five years following the date of this order," March 7, 1995.

Unfortunately, based upon other factual findings made by the trial court, it is evident that during the course of the proceedings in both this court and the trial court that have followed entry of the original divorce decree, Ms. Willey's financial needs have not been met by the alimony she has actually received. The disparity is sufficient that for her to have pursued university level education on a full-time basis as contemplated by the trial court would likely have made her a public charge. Because she had not received the originally awarded alimony, she could not have made use of any "additional alimony."

We accept the trial court's findings that rehabilitative alimony of $500 per month, plus the costs of tuition and books, for a period equal to that of nine academic quarters is warranted by the facts of this case. The court found that Ms. Willey "could enhance her earning capacities through obtaining further education," and substantial evidence was presented to the court by both parties that revealed a great disparity between Mr. and Ms. Willey's earnings. The trial court also implied a finding in its conditional rehabilitative award that Ms. Willey must maintain full-time student status for such study to be appropriately beneficial. These findings sufficiently support the rehabilitative alimony award, and we affirm that portion of the decree.

■ However, given the full-time nature of the contemplated study and the parties' income and needs, we find that the rehabilitative award also contemplated a concurrence in time with the original alimony awarded. How else may the rehabilitative alimony be considered "additional alimony?" As the trial court found, for Ms. Willey to attend full-time study, she must be able to meet not only her reasonable monthly expenses, but also the increased costs of education. The trial court determined these increased costs to be university costs, tuition, books, and $500 per month, for the duration of the nine quarters of anticipated study. An important purpose of alimony is to provide for reasonable monthly expenses and to prevent Ms. Willey from becoming a public charge. *See Jones v. Jones,* 700 P.2d 1072, 1075 (Utah 1985).

Given these factors, and in reliance upon the facts as found by the trial court, we hold that the rehabilitative alimony award shall coincide with the underlying alimony award, for the period established by the trial court as reasonable, a period of five years. However, given the confused, and indeed patently unfair nature of the prior order, under which Ms. Willey was required to elect one award or the other, we extend the underlying alimony from March 7, 1995, for a period of five years.

### D. Alimony award to Ms. Willey.

█ As we discussed in *Willey I,* the Utah Supreme Court has established a standard for setting alimony. *See Jones,* 700 P.2d at 1075. Under that standard, three factors must be considered in fashioning a reasonable alimony award: "[1] the financial conditions and needs of the [spouse seeking support]; [2] the ability of the [spouse seeking support] to produce a sufficient income for [himself or] herself; and [3] the ability of the [payor spouse] to provide support." *Willey I,* 866 P.2d at 550 (quoting *Jones,* 700 P.2d at 1075) (alterations in original). We held in *Willey I* that the trial court had abused its discretion because it failed to consider all three of the *Jones* factors. *Id.* at 550–51.

This court has already recognized that the trial court addressed the second *Jones* factor in its original divorce decree, and we recognize that it again did so on remand. *See id.* However, in *Willey I,* this court noted that the trial court "made no findings on [Ms.] Willey's financial need as the first *Jones* factor requires. Nor did it make findings on Mr. Willey's financial need, which underlying factual determination is required for an assessment of the third *Jones* factor, the ability of the payor spouse to provide support." *Id.*

As we explained above, we accept the amounts the parties submitted as reflective of their reasonable financial needs at the time of trial. We also have discussed our determination, based upon findings made by the trial court, that Ms. Willey is in need of support to meet her financial needs, which have not been met by the alimony she has actually received. *See Hall v. Hall,* 858 P.2d 1018, 1025 (Utah App.1993) (explaining that this court may imply unstated findings "if it is reasonable to assume that the trial court actually considered the controverted evidence and necessarily made a finding to resolve the controversy, but simply failed to record the factual determination it made"); *see also State v. Ramirez,* 817 P.2d 774, 787 (Utah 1991) (explaining "in cases in which factual issues are presented to and must be resolved by the trial court but no findings of fact appear in the record," the appellate court can "assume that the trier of facts found them in accord with its decision");

*Adams v. Board of Review,* 821 P.2d 1, 5 (Utah App.1991) ("A finding may be implied if it is clear from the record, and therefore apparent upon review, that the finding was actually made as part of the tribunal's decision."). Also, based on the trial court's findings and our above analysis, we find that Mr. Willey is able to provide Ms. Willey with the financial support she needs. *See Hall,* 858 P.2d at 1018, 1025 (Utah App.1993).

Based upon the facts as found by the trial court, and upon the correction of errors described above, Ms. Willey is awarded alimony as follows:

1. From March 7, 1995, until March 6, 2000, the sum of $2,240.00 as monthly alimony, unless sooner terminated or modified according to law.

2. As additional alimony, for the purpose of assisting Ms. Willey in rehabilitation, and to prevent her from becoming a public charge, the sum of $500.00 per month for each month or portion of a month during which she is duly enrolled as a full-time student at the University of Utah or similar institution, up to a maximum of nine academic quarters over a period not to extend past March 6, 2000, plus an amount equal to the sum of tuition, fees, books, and other costs directly incurred in pursuing that education.

### II. Allocation of Debt

We have before us two related issues arising from the allocation of the parties' marital debts. First, we review the numerical allocation made by the trial court. Second, we consider Ms. Willey's argument that the trial court improperly allowed Mr. Willey to offset his alimony obligation against Ms. Willey's share of the marital debt.

### A. Allocation of marital debt.

After trial, the parties' marital residence was sold at a loss. The resulting debt was divided between the parties. Other debts arising from various loans and obligations were also divided between the parties. However, Mr. Willey voluntarily paid his and Ms. Willey's marital debts in full. As a result, the trial court allowed Mr. Willey to withhold

alimony from Ms. Willey to offset amounts Ms. Willey owed Mr. Willey for repaying her share of the marital debts. On remand, the trial court considered Ms. Willey's portion of the marital debts forgiven because Mr. Willey had already fully paid Ms. Willey's debts. As an exchange, the court did not calculate the debt as a part of Ms. Willey's needs in determining alimony.

The attorneys for both parties agreed to this arrangement at trial on remand, and on appeal, neither party challenges the trial court's action. We therefore accept the resolution reached and do not disturb this award.

### B. Offset of alimony.

▉ In a separate but consolidated appeal, Ms. Willey challenges the legality of allowing Mr. Willey to offset marital debt Ms. Willey owed him against the alimony obligation he owed Ms. Willey. This specific question was referred by the trial court to the domestic commissioner for review. After noting the obligation Ms. Willey owed to Mr. Willey arising from the marital debts, and rejecting Mr. Willey's suggestion that it is inequitable to allow Ms. Willey to collect alimony while leaving available to her the ability to discharge the countervailing debt through filing for bankruptcy, the commissioner focused on what he considered to be more compelling concerns. The commissioner stated:

> [The] Commissioner also recognizes that the Court's award of alimony recognized [Ms. Willey's] inability to meet her own reasonable and necessary monthly living expenses and [Mr. Willey's] ability to contribute toward [Ms. Willey's] unmet need. To allow [Mr. Willey] a total offset of his alimony obligation against [Ms. Willey's] obligation to [him] would frustrate the purpose of the Court's award of alimony.

The commissioner recommended that the trial court require Mr. Willey to repay the total amount of withheld alimony to Ms. Willey, and to make ongoing alimony payments as required by the divorce decree. The trial court rejected this recommendation. Instead, in its order of April 5, 1993, the trial court expressly allowed Mr. Willey to "offset against [$18,840.86, the amount of Mr. Willey's judgment against Ms. Willey for the

marital debt she owed to him,] the alimony he would otherwise be required to pay to [Ms. Willey]." In addition, the trial court apparently took the offset amount into consideration in reallocation of the marital debts in Ms. Willey's favor.

Under the facts of this case, the trial court erred by allowing Mr. Willey to offset the alimony against Ms. Willey's debt to him. Nonetheless, we have taken into account the inappropriate offset in extending Ms. Willey's alimony. Therefore, we do not disturb the trial court's allocation and award only because we have awarded Ms. Willey additional alimony to facilitate the rehabilitative award the trial court found appropriate. To also require Mr. Willey to retroactively pay the alimony retained under the inappropriate offset would be inequitable and unjust. Our resolution of the case does not require reworking the debt allocation, nor does it require us to revisit the trial court's decision to allow Mr. Willey to offset Ms. Willey's debt to him against his alimony obligation.

### III. Attorney Fees

▉ The trial court has again failed to make the necessary findings regarding attorney fees for the original trial and proceedings in this case. Furthermore, no findings have been made regarding the appropriate amount of attorney fees to be awarded Ms. Willey for her prior successful appeal, as we ordered. As we said in *Willey I*, the

> trial court may award attorney fees in divorce proceedings. Utah Code Ann. § 30–3–3 (Supp.1993). "The award must be based on evidence of the financial need of the receiving spouse, the ability of the other spouse to pay, and the reasonableness of the requested fees." *Bell v. Bell*, 810 P.2d 489, 493 (Utah App.1991). "The decision to make such an award and the amount thereof rest primarily in the sound discretion of the trial court." *Id.* However, "[t]o permit meaningful review of the trial court's discretionary ruling, '[w]e have consistently encouraged trial courts to make findings to explain the factors which they considered relevant in arriving at an attorney fee award.'" *Id.* at 494....

A court may consider, among other factors, the difficulty of the litigation, the efficiency of the attorneys, the reasonableness of the number of hours spent on the case, the fee customarily charged in the locality, the amount involved in the case and the result attained, and the expertise and experience of the attorneys involved.

*Id.,* 810 P.2d at 493–94.

... However, the trial court did not independently assess ... the reasonableness of [Ms.] Willey's fees. The court merely noted ["the entire financial condition of the parties cannot justify combined attorney's fees in excess of $65,000 with little or no marital property remaining"]. While this statement may indicate the trial court believed both parties' fees were unreasonable, it does not constitute a finding addressing the reasonableness of [Ms.] Willey's attorney fees according to the *Bell* factors.

*Willey I,* 866 P.2d at 555–56.

While the trial court has entered findings regarding Ms. Willey's financial ability to pay attorney fees necessitated by the trial, no findings regarding her ability to pay fees incurred on appeal have been made. The trial court found that Mr. Willey had the ability to pay Ms. Willey's attorney fees. However, the trial court failed to make specific findings regarding the reasonableness of Ms. Willey's fees at trial and on appeal.

In this case the trial court has twice failed to address and make the necessary factual determinations. In the interests of finality, and to avoid subjecting the parties to even more expense and difficulty in resolving what should have been a routine part of the case, we are constrained to make our own determination on the issue. Fairness to both parties demands such a resolution.

Rather than remanding again for the trial court to examine these same issues, we will exercise our equitable power to review the evidence directly regarding equitable matters, and to make the necessary findings on the issues not reached by the trial court. *See Owen v. Owen,* 579 P.2d 911, 913 (Utah 1978) (noting that appellate court can review evidence and make its own findings in di-

vorce proceeding, which is in equity); *see also Thompson v. Thompson,* 709 P.2d 360, 361 (Utah 1985) (per curiam) ("On appeal, we have broad equitable powers and are not necessarily bound or limited by the trial court's findings."); *Haddow v. Haddow,* 707 P.2d 669, 671 (Utah 1985) ("[I]n reviewing a trial court's actions in a divorce case, we are vested with broad equitable powers."). To do otherwise would subject both parties to the unwarranted necessity of once again presenting these questions to the trial court.

We accept the trial court's finding that Ms. Willey was unable to pay attorney fees incurred in the course of the trial. We find no evidence to suggest her ability has improved. We therefore find her still in need of financial assistance to pay those fees.

We also accept and find no evidence requiring us to revisit or revise the trial court's finding that Mr. Willey is financially able to assist Ms. Willey with payment of the attorney fees she incurred.

The trial court has twice expressed concern that the total attorney fees incurred by the parties in the course of this litigation is excessive considering the absence of any financial net worth after deduction of the marital debts from the marital assets. We share that concern. However, that is not the determining issue. *See Bell v. Bell,* 810 P.2d 489, 493–94 (Utah App.1991). The trial court should have addressed the question of whether, under all the relevant circumstances, Ms. Willey's attorney fees are reasonable. The factors identified in *Bell* also permit an examination of the difficulty of the litigation, the attorneys' efficiency, the reasonableness of the number of hours spent on the case, the fee customarily charged in the locality, the amount involved in the case and the result obtained, and the expertise and experience of the attorneys involved. *Willey I,* 866 P.2d at 555.

The trial court found that this litigation should not have been difficult, that the efficiency of both attorneys was not good, that the number of total hours for which the attorneys have billed is excessive under the circumstances of this case, that Ms. Willey's attorney presented evidence of $19,215.00 in

fees as of the time of trial, and a total of $36,015.00 as of the time of the hearing on remand, for which Ms. Willey sought reimbursement of $15,150.00 for fees and $1,539.38 in costs at the time of the hearing on remand. The trial court also found Ms. Willey's attorney's hourly rate of $150 to be reasonable, given his experience and expertise. We do not disturb these findings.

The critical determination to be made here is not the overall efficiency of attorneys for both parties, but whether or not the fees sought by Ms. Willey are reasonable under the circumstances of this case. At the time of the hearing on remand, Ms. Willey sought reimbursement of $20,150 from a total of $36,015 she is obligated to pay. Of this amount, Mr. Willey had already been ordered to pay $5,000.00. Without adequate explanation or findings, on remand the trial court ordered Mr. Willey to pay an additional $10,000 as the correct adjustment.

Under the unique circumstances of this case we award Ms. Willey a total of $36,015.00 in attorney fees, plus $1,539.38 in costs, for fees and costs incurred at trial, on appeal, on remand, and on this appeal. All other fees and costs incurred herein by either party, including those incurred in the course of this second appeal, shall be the sole obligation of the party incurring those expenses.

## CONCLUSION

We reverse and remand to the trial court for entry of an amended decree as is necessary to correct the alimony award to include the sum of $2,240.00 per month effective March 7, 1995, and continuing until five years from that date. This award shall be subject to termination or modification according to law. The order shall include the rehabilitative award previously described in this opinion, with the provision that it shall be available from March 7, 1995, and continuing until five years from that date. Finally, the order shall include a total of $37,554.38 awarded to Ms. Willey for attorney fees and costs incurred in the entire course of these proceedings. Any amount Mr. Willey actually paid to Ms. Willey for attorney fees under any prior trial court order shall be credited against this award of fees and costs.

Reversed and remanded for entry of an order consistent with this opinion.

DAVIS, Associate P.J., and GREENWOOD, J., concur.